1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HILDAWN DESIGN LLC, | CASE NO. 3:25-cv-05277-DGE |
| Plaintiff, | ORDER ON MOTION TO DISMISS (DKT. NO. 4) |
| v. | |
| DAD GANG CO LLC, | |
| Defendant. | |

## I       INTRODUCTION

This matter comes before the Court on Defendant Dad Gang Co.'s ("Dad Gang") motion to dismiss Plaintiff Hildawn Design LLC's ("Hildawn) complaint.  (Dkt. No. 4.)  For the foregoing reasons, the motion is GRANTED.  Plaintiff's complaint is DISMISSED with leave to amend.

## II       BACKGROUND

On March 28, 2025, Plaintiff filed a complaint alleging trademark infringement in violation of 15 U.S.C. § 1114, unfair competition in violation of 15 U.S.C. § 1125(a), and

1    common law trademark infringement and unfair competition. (Dkt. No. 1 at 6–8.) Plaintiff is

2    the owner of two federal trademark registrations for "GIRLDAD" and "BOYDAD." (*Id*. at 3.)

3    The trademarks were issued for baseball caps and hats, T-shirts, socks, polo shirts and rugby

4    shirts. (*Id*.) Plaintiff is "a distributor of sportswear, including hats, shirts, and sweatshirts" and

5    "has widely promoted these products using the Trademarks at Issue." (*Id*. at 3–4.) Plaintiff

6    asserts that "[a]s a result of Hildawn's continuous and exclusive use of the Trademarks at Issue

7    in connection with its products, the Trademarks at Issue enjoy wide public acceptance and

8    association with Hildawn, and have come to be recognized widely and favorably by the public as

9    an indicator of the origin of Hildawn's goods." (*Id*. at 4.)

10         Plaintiff argues that "Dadgang is manufacturing, producing, marketing, distributing,

11    offering for sale, and selling in interstate commerce hats bearing the identical words of the

12    Trademarks at Issue" without Plaintiff's consent or approval. (*Id*.) Defendant's use of the

13    marks, Plaintiff asserts, is likely to confuse consumers and dilute the distinctive quality of the

14    marks at issue. (*Id*. at 5.) Specifically, Defendant's sale of hats printed with the phrases "Girl

15    Dad" and "Boy Dad" "is inflicting irreparable harm on the goodwill symbolized by the

16    Trademarks at Issue and the reputation for quality they embody," Plaintiff concludes. (*Id*. at 5.)

17    Defendant moved to dismiss plaintiff's complaint on May 30, 2025. (Dkt. No. 4.) The matter is

18    now ripe for disposition.

19             **III      DISCUSSION**

20       **A. Legal Standard**

21         Federal Rule of Civil Procedure 12(b) motions to dismiss may be based on either the lack

22    of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

23    theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). Material

24

1   allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston*

2   *v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6)

3   motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide

4   the grounds of his entitlement to relief requires more than labels and conclusions, and a

5   formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v.*

6   *Twombly*, 550 U.S. 544, 554–55 (2007) (internal citations omitted). "Factual allegations must be

7   enough to raise a right to relief above the speculative level, on the assumption that all the

8   allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555. The complaint must

9   allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 547. The court

10  need not, however, accept as true "allegations that are merely conclusory, unwarranted

11  deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d

12  979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

13      **B.  Analysis**

14      The purpose of a trademark is to designate a product's source or origin. *See* 15 U.S.C.

15  § 1127 (defining "trademark" to include "any word, name, symbol, or device, or any

16  combination thereof—(1) used by a person ... to identify and distinguish his or her

17  goods . . . from those manufactured or sold by others and to indicate the source of the goods,

18  even if that source is unknown"). When, as in this case, trademark and unfair competition claims

19  under 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) are based on the same infringing conduct,

20  courts apply the same analysis to both claims. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967

21  F.2d 1280, 1288 n. 2 (9th Cir. 1992). "To prove a claim for trademark infringement or unfair

22  competition, a party must establish: (1) ownership of the trademark at issue; (2) use by

23  defendant, in commerce, without authorization, of the plaintiff's mark; and (3) that defendant's

24

1    use of the mark is likely to cause confusion." *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 925 F.

2    Supp. 2d 1067, 1073 (C.D. Cal. 2012).[1]

3            For Plaintiff to successfully plead infringement, it is not enough to allege "that the

4    'accused products merely display' the at-issue phrase." *Cove USA LLC v. No Bad Days Enters.,*

5    *Inc.*, No. 820CV02314JLSKES, 2022 WL 423399, *3 (C.D. Cal. Jan. 5, 2022) (quoting *LTTB,*

6    *LLC v. Redbubble, Inc.*, 385 F. Supp. 3d 916, 919 (N.D. Cal. 2019) (hereinafter, "*LTTB I*"),

7    *aff'd,* 840 F. App'x 148 (9th Cir. 2021) (hereinafter, "*LTTB II*"). Rather, Plaintiff must plead

8    facts that plausibly suggest "the phrase is used in a 'source-identifying manner.'" (*Id.*) (quoting

9    *LTTB I*. 385 F. Supp. 3d at 917). This follows from a simple premise of trademark law: the

10    purpose of the trademark is to identify the source of specific goods. Accordingly, a "trademark

11    holder cannot prevent others from using [a Trademarked phrase or pun] in contexts that do not

12    imply source," because "no one can claim exclusive rights to use [a] pun merely by printing it on

13    [clothing] . . . and calling it a 'trademark.'" *LTTB I*, 385 F. Supp. 3d at 917. Therefore, if

14    Plaintiff fails to plead facts plausibly showing "that consumers buy [the] goods because they

15    identify [Plaintiff] as the source, rather than because of the aesthetic function of the phrase [Girl

16    Dad OR Boy Dad]," Defendant has failed to plead infringement. *LTTB II,* 840 F. App'x at 150.

17            Relying heavily on *LTTB I* and *LTTB II,* Defendant argues that dismissal is proper under

18    the doctrine of aesthetic functionality because the use of the phrases Girl Dad or Boy Dad on

19    Plaintiff's clothing items is not source-identifying but rather functionally aesthetic. (Dkt. No. 4

20

21

22    _____

      [1] The elements necessary to establish a likelihood of confusion for the common law and statutory
23    claims are the same and may therefore also be analyzed coextensively. *Safeworks, LLC v.*
      *Teupen Am.*, LLC, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010); *Bio Mgmt. Nw. Inc. v.*
24    *Washington Bio Servs.*, No. C20-670 MJP, 2021 WL 4319448, *2 (W.D. Wash. Sept. 23, 2021).

at 7–11.)[2]  The Ninth Circuit has explained that "because trademark law is concerned only with identification of the maker of the product so as to avoid confusing consumers, it 'does not prevent a person from copying so-called 'functional' features of a product which constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product.'" *Fleischer*., 925 F. Supp. at 1073 (quoting *International Order of Job's Daughters v. Lindeburg & Co*., 633 F.2d 912, 917 (9th Cir.1980)).  *LTTB I* involved a trademark infringement claim brought against Redbubble—an online clothing retailer—for its use of the phrase "Lettuce Turnip the Beet" on various products. *LTTB I*, 385 F. Supp. 3d at 917–918.  The Court concluded that "[t]here [wa]s no evidence in the record from which a reasonable trier of fact could conclude that consumers seek to purchase products based on LLTB's reputation" but "[r]ather[ ] as LTTB's evidence and argument ma[d]e clear, consumers [were] interested in purchasing products displaying the pun." *Id*. at 920.  The Ninth Circuit affirmed, holding that "there [wa]s no evidence here that consumers buy LTTB's goods because they identify LLTB as the source, rather than because of the aesthetic function of the phrase, 'LETTUCE TURNIP THE BEET.'"  *LTTB II,* 840 F. App'x at 151.

To determine whether a use is an "aesthetically functional" use or a trademark use, courts consider whether "protection of the feature as a trademark would impose a significant non-reputation-related competitive disadvantage." *Au–Tomotive Gold, Inc. v. Volkswagen of Am., Inc*., 457 F.3d 1072 (9th Cir .2006); *see also Fleischer Studios, Inc. v. A.V.E.L.A., Inc*., 925 F. Supp. 2d 1067, 1073–1074 (C.D. Cal. 2012) (synthesizing caselaw to conclude that "the focus of the inquiry turns on whether the use of the mark has a source-identifying or 'reputation-related'

---

[2] Defendant also requests that the Court take judicial notice of certain USPTO records.  (Dkt. No. 4 at 6.)  It is not necessary to consider these records at this stage in the litigation—such evidence is more properly taken up at the summary judgment stage.

1    function.  If not, then the use may be 'aesthetically functional' and is not a trademark use.").  In

2    this way, Defendants argue that their use of the phrases "girl dad" and "boy dad" is aesthetically

3    functional and "does nothing to imply that Dad Gang is selling products that originate from

4    Hildawn." (Dkt. No. 4 at 11.)   Just as in *LTTC I*, the people who purchase their products are

5    buying *the phrase*, not the brand, Defendant's suggest.

6            It is important to note that this issue is *not* a question of whether Plaintiff's trademark is

7    invalid.  Instead, the issue of aesthetic functionality is appropriately framed as a question of

8    whether Defendant fails to allege "likelihood of confusion as to source, [because] the mere use of

9    the [phrase] on the face of various products cannot be source-identifying." *LTTB I*, 385 F. Supp.

10   3d at 921.

11          Plaintiff responds by asserting that "[w]hether a trademark defendant's use of an asserted

12   trademark is protected under the aesthetic functionality doctrine cannot be decided on a motion

13   to dismiss."  (Dkt. No. 10 at 8.)  "Overwhelming case authority confirms that aesthetic

14   functionality is a question of fact," Plaintiff points out, emphasizing that *LLTC I* was decided on

15   summary judgment and *Cove* on a motion for a preliminary injunction.  (*Id*. at 8–9.)  Plaintiff is

16   correct that the issue of functionality is ill suited for disposition on a motion to dismiss.  *Tie*

17   *Tech, Inc. v. Kinedyne Corp*., 296 F.3d 778, 783 (9th Cir. 2002) ("[F]unctionality is generally

18   viewed as an intensely factual issue."); *Fleischer*., 925 F. Supp. 2d at 1073) (to determine

19   whether a use is aesthetically functional, "a court must closely examine the articles themselves,

20   the defendant's merchandising practices, and any evidence that consumers have actually inferred

21   a connection between the defendant's product and the trademark owner") (citation omitted)).

22   However, Plaintiff still bears the burden of putting forth sufficient non-conclusory factual

23   allegations that—if true—support a claim for relief.

24

1     The Complaint alleges no facts that suggest that a purchaser of the allegedly infringing

2 hats perceived the phrases at issue as source-identifying.  Ultimately, while issues of confusion

3 and functionality are factual questions, a complaint "must nevertheless contain sufficient facts to

4 plausibly allege a probability of confusion between plaintiff's product or services and those of

5 the alleged infringer."  *OffWhite Prods., LLC v. Off-White LLC*, 480 F. Supp. 3d 558, 564

6 (S.D.N.Y. 2020) (quoting *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d

7 Cir. 2016)).  In the Ninth Circuit, the likelihood that an appreciable number of consumers will be

8 confused is determined by evaluating a number of factors,[3] yet other than conclusory allegations

9 that confusion is likely to occur, Plaintiff sets forth no factual allegations underneath those

10 established factors.  Plaintiff also fails to point to any facts alleged in the complaint that suggest

11 the use is not aesthetically functional.  *C.f., Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC*,

12 No. CV 23-8005-MWF (KSX), 2024 WL 661199, *4 (C.D. Cal. Jan. 5, 2024).[4]

13

_____

14 [3] "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the
marketplace is likely to be confused as to the origin of the good or service bearing one of the
15 marks." *Dreamwerks Production Group, Inc. v. SKG Studio, d/b/a Dreamworks SKG*, 142 F.3d
1127, 1129 (9th Cir. 1998).  "Courts may determine likelihood of confusion as a matter of law on
16 either a motion to dismiss or summary judgment." *Infostream Group Inc. v. Avid Life Media
Inc.*, No. CV 12–09315 DDP (AJWx), 2013 WL 6018030, *3 (C.D. Cal. Nov. 12, 2013) (citing
17 *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 859 (9th Cir. 1996)).  Courts in the Ninth Circuit
use an eight-factor test to determine the question of likelihood of confusion: (1) strength of the
18 mark; (2) proximity or relatedness of the goods; (3) similarity of sight, sound and meaning; (4)
evidence of actual confusion; (5) marketing channels; (6) type of goods and purchaser care; (7)
19 intent; and (8) likelihood of expansion.  *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d
1127, 1129 (9th Cir. 1998).  The test should be applied in a "flexible fashion" and a
20 "determination may rest on only those factors that are most pertinent to the particular case before
the court." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012).  Plaintiff
21 fails to plead facts that plausibly suggest confusion.
22 [4] In *Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC*, the court declined to grant a motion to
dismiss where the defendant raised aesthetic functionality. Tellingly, the court stated that it
23 "d[id] not interpret the Complaint as suggesting that Defendant is prohibited from displaying the
words 'Beverly Hills' on its products. Instead, the Court underst[ood] Plaintiff as taking issue
with Defendant use of the phrase 'Beverly Hills' in Plaintiff's protected, stylized lettering."  No.

24

1

## IV    CONCLUSION

2    Accordingly, Defendant's motion (Dkt. No. 4) is GRANTED.  Plaintiff's complaint is

3    DISMISSED with leave to amend.  Should Plaintiff wish to file an amended complaint, it must

4    do so by August 27, 2025.

5    Dated this 11th day of August, 2025.

6

7

8    David G. Estudillo
     United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23    CV 23-8005-MWF (KSX), 2024 WL 661199, *4 (C.D. Cal. Jan. 5, 2024). Contrastingly, the
      complaint at issue here *does* appear to suggest that Defendant is prohibited from displaying the
24    words "girl dad" or "boy dad" on its products.

ORDER ON MOTION TO DISMISS (DKT. NO. 4) - 8