UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HILDAWN DESIGN LLC,<br><br>    Plaintiff,<br>v.<br><br>DAD GANG CO. LLC,<br><br>    Defendant. | CASE NO. 3:25-cv-05277-DGE<br><br>ORDER ON RENEWED MOTION TO DISMISS (DKT. NO. 15) |

### I    INTRODUCTION

This matter comes before the Court on Defendant Dad Gang Co.'s ("Dad Gang") motion to dismiss Plaintiff Hildawn Design LLC's ("Hildawn") amended complaint. (Dkt. No. 15.) For the foregoing reasons, Defendant's motion is DENIED.

### II    BACKGROUND

On March 28, 2025, Plaintiff filed a complaint alleging trademark infringement in violation of 15 U.S.C. § 1114, unfair competition in violation of 15 U.S.C. § 1125(a), and common law trademark infringement and unfair competition. (Dkt. No. 1 at 6–8.) This Court

granted Defendant's motion to dismiss on August 11 and granted Plaintiff leave to amend. (Dkt. No. 12.) In its order, the Court concluded that Plaintiff alleged "no facts that suggest that a purchaser of the allegedly infringing hats perceived the phrases at issue as source-identifying," nor did it "point to any facts alleged in the complaint that suggest [Defendant's] use is not aesthetically functional." (*Id.* at 7.) Plaintiff amended its complaint on August 27, raising the same three causes of action. (Dkt. No. 13.)

  To summarize the pertinent facts, Plaintiff is the owner of federal trademark registrations for the phrases "GIRLDAD" and "BOYDAD." (*Id.* at 3.) The trademarks for both phrases were issued for baseball caps and hats, shirts, socks, sweatshirts, t-shirts, camouflage shirts, polo shirts, and rugby shirts. (*Id.* at 3–4.) Plaintiff is a "distributor of sportswear, including hats, shirts, and sweatshirts," and for the last eight years through the present, has "widely promoted these products" using the contested trademarks. (*Id.* at 4.) Plaintiff states that it does not use the name Hildawn on its products; instead, the marks "GIRLDAD" and "BOYDAD" feature prominently on the products themselves and on tags and labels, so the marks have "come to signify the quality and reputation" of Plaintiff's products. (*Id.*) The complaint includes various images of t-shirts and hats with the phrases "GIRLDAD" or "BOYDAD" on them as examples of the trademarks "utilized as source identifiers." (*Id.* at 5–7.)

  Plaintiff elaborates that its "extensive customer base, cultivated through multiple online platforms and its personal website, has resulted in tens of thousands of reviews attesting to its 5-star customer service, the quality of its product materials, and its designs." (*Id.* at 7.) It has "invested substantial resources in developing, promoting, and protecting" the marks at issue here, and the marks have apparently "become identified by the consuming public with [Plaintiff]'s products." (*Id.*) The marks "enjoy wide public acceptance and association with

Plaintiff's products," and the marks are recognized "widely and favorably as a source indicator for the goods at issue here." (*Id.* at 8.) In sum, "the purchasing public has come to associate" the marks as the source of the goods at issue in this case. (*Id.*)

Plaintiff provides various examples of what it considers Defendant's use of the trademarks as source identifiers, without Plaintiff's authorization or consent:

- Using the marks BOYDAD and GIRLDAD "prominently in promoting and selling [Defendant]'s hats utilizing the Trademarks at Issue on the product titles";
- Using the marks "as search terms on its website to promote [Defendant]'s own infringing products when the BOYDAD and/or GIRLDAD marks are inserted as search terms on its site"; and
- Listing and describing the "infringing hat products with the Trademarks at Issue used as a metatag in the HTML code of [Defendant]'s website" which "causes search engines to display [Defendant]'s website in search results when consumers search for the Trademarks at Issue." This "diverts consumers searching for [Plaintiff]'s goods or services to [Defendant]'s website."

(*Id.* at 9–16.) Plaintiff asserts these uses are "not ornamental or aesthetic." (*Id.* at 9.) Various examples of the allegedly infringing products and search term screenshots are included as examples. (*See id.* at 9–15.)

Plaintiff further alleges Defendant is using the marks as a source identifier, which causes confusion among Plaintiff's "competitors and legitimate business partners." (*Id.*) To illustrate this confusion, Plaintiff attaches screenshots of messages from a "competitor store owner" asking if the phrase "girl dad" was safe to use because the "Dad Gang company does a girl dad hat." (*Id.* at 17–18.) Defendant's unauthorized use, according to Plaintiff, "has degraded the

value of the Trademarks at Issue to both [Plaintiff] and its legitimate business partners and licensees." (*Id.* at 18.)

Plaintiff concludes Defendant's use of the trademarks will cause confusion to consumers "before, during, and after the time of purchase." (*Id.* at 19.) Defendant moved to dismiss a second time, arguing that although Plaintiff added new factual allegations, its core legal theory, and its shortcomings, remain the same as in the initial complaint. (*See* Dkt. No. 15.)

### III     DISCUSSION

**A. Legal Standard**

Federal Rule of Civil Procedure 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true [even if doubtful in fact]." *Id*. at 555. The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 547. "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden*

*State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (internal citation omitted).

### B. Analysis

The purpose of a trademark is to designate a product's source or origin. *See* 15 U.S.C. § 1127 (defining "trademark" to include "any word, name, symbol, or device, or any combination thereof—(1) used by a person . . . to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown"). When, as in this case, trademark and unfair competition claims under 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) are based on the same infringing conduct, courts apply the same analysis to both claims. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1288 n.2 (9th Cir. 1992). "To prove a claim for trademark infringement or unfair competition, a party must establish: (1) ownership of the trademark at issue; (2) use by defendant, in commerce, without authorization, of the plaintiff's mark; and (3) that defendant's use of the mark is likely to cause confusion." *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 925 F. Supp. 2d 1067, 1073 (C.D. Cal. 2012). The necessary elements to establish a likelihood of confusion for the common law and statutory claims are the same; they may therefore be analyzed coextensively. *Safeworks, LLC v. Teupen Am.*, LLC, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010); *Bio Mgmt. Nw. Inc. v. Wash. Bio Servs.*, No. C20-670 MJP, 2021 WL 4319448, *2 (W.D. Wash. Sept. 23, 2021).

As with the first round of briefing, there appears to be no question that (1) Plaintiff owns trademarks for the phrases "GIRLDAD" and "BOYDAD" that were issued for various clothing products (Dkt. No. 13 at 3–4); and (2) Defendant is selling products that feature the phrases "girl

dad" and "boy dad" or some variation thereof (*see id.* at 9–13).[1] Thus, the question for resolving this renewed motion to dismiss is whether Defendant's use of the mark is likely to cause confusion among consumers. *Fleischer Studios*, 925 F. Supp. 2d at 1073. In reviewing some of the specific examples of the use of the mark in the amended complaint, the Court concludes Plaintiff has met its burden at this stage.

It is not enough to allege "that the 'accused products merely display' the at-issue phrase." *Cove USA LLC v. No Bad Days Enters., Inc.*, No. 820CV02314JLSKES, 2022 WL 423399, *3 (C.D. Cal. Jan. 5, 2022) (quoting *LTTB, LLC v. Redbubble, Inc.*, 385 F. Supp. 3d 916, 919 (N.D. Cal. 2019) (hereinafter, "*LTTB I*"), *aff'd,* 840 F. App'x 148 (9th Cir. 2021) (hereinafter, "*LTTB II*"). Rather, the plaintiff must plead facts that plausibly suggest "the phrase is used in a 'source-identifying manner.'" *Id*. (quoting *LTTB I*, 385 F. Supp. 3d at 917). This follows from a simple premise of trademark law: the purpose of the trademark is to identify the source of specific goods. Accordingly, a "trademark holder cannot prevent others from using [a Trademarked phrase or pun] in contexts that do not imply source," because "no one can claim exclusive rights to use [a] pun merely by printing it on [clothing] . . . and calling it a 'trademark.'" *LTTB I*, 385 F. Supp. 3d at 917. Therefore, if Plaintiff cannot plead facts plausibly showing that consumers buy the goods because they identify Plaintiff as the source, rather than because of the aesthetic function of the phrase "Girl Dad" or "Boy Dad," Plaintiff has failed to plead infringement. *LTTB II,* 840 F. App'x at 150.

Because trademark law focuses on avoiding confusing customers, it "'does not prevent a person from copying so-called "functional" features of a product which constitute the actual

---

[1] *See also* Dkt. No. 12 at 6 ("this issue is *not* a question of whether Plaintiff's trademark is invalid").

benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product.'" *Fleischer Studios*, 925 F. Supp. at 1073 (quoting *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1980)). To illustrate, *LTTB I* involved a trademark infringement claim brought against Redbubble—an online clothing retailer—for its use of the phrase "Lettuce Turnip the Beet" on various products. *LTTB I*, 385 F. Supp. 3d at 917–918. The court concluded that "[t]here [wa]s no evidence in the record from which a reasonable trier of fact could conclude that consumers seek to purchase products based on LLTB's reputation" but "[r]ather[ ] as LTTB's evidence and argument ma[d]e clear, consumers [were] interested in purchasing products displaying the pun." *Id.* at 920. The Ninth Circuit affirmed, holding that "there [wa]s no evidence here that consumers buy LTTB's goods because they identify LLTB as the source, rather than because of the aesthetic function of the phrase, 'LETTUCE TURNIP THE BEET.'" *LTTB II*, 840 F. App'x at 151.

    To determine whether a use is an "aesthetically functional" use or a trademark use, courts consider whether "protection of the feature as a trademark would impose a significant non-reputation-related competitive disadvantage." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1072 (9th Cir .2006); *see also Fleischer Studios*, 925 F. Supp. 2d at 1073–1074 (synthesizing caselaw to conclude that "the focus of the inquiry turns on whether the use of the mark has a source-identifying or 'reputation-related' function. If not, then the use may be 'aesthetically functional' and is not a trademark use."). In sum, courts "must closely examine the articles themselves, the defendant's merchandising practices, and any evidence than consumers have *actually inferred a connection between the defendant's product and the trademark owner*." *Fleischer Studios*, 925 F. Supp. 2d at 1073 (emphasis added) (citation omitted).

1  Here, Defendant argues the doctrine of aesthetic functionality bars infringement liability because the use of the phrases "Girl Dad" or "Boy Dad" on Plaintiff's clothing items is not source-identifying but is instead functionally aesthetic. (Dkt. No. 15 at 13–16.) The Court agrees to a certain extent—nowhere in the text of the amended complaint does Plaintiff identify why or how a consumer of Defendant's products would be confused as to its source. (*See* Dkt. No. 13 at 3–19.) Nor is the Court convinced by Plaintiff's allegation that a *competitor* asking if the phrase "girl dad" was "safe to use" after apparently seeing Defendant's product somehow establishes that consumers would be confused.[2] *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001) ("Likelihood of confusion exists when *customers* viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark.") (emphasis added) (citation omitted). However, Plaintiff is aided by the inclusion of photos of its products and Defendant's products to show there is a "connection between the defendant's product and the trademark owner." *Fleischer Studios*, 925 F. Supp. 2d at 1073 (citation omitted).

On the Court's review, the potential for confusion is, for the most part, highly questionable. Plaintiff's products (*see* Dkt. No. 13 at 5–7) are visually distinct from Defendant's products (*see id.* at 9–13)—with one notable exception. Plaintiff's pink baseball cap with the black lid shows a stylized, cursive-like font on the inside tag, with the word "Girl" stacked on top and offset to the left and the word "Dad" on the bottom and offset right. (*Id.* at 6.) The same stylized font is shown on what appear to be postcards that are laying on top of several of the

---

[2] If anything, the competitor's inquiry into the "health" of the mark further underscores that there is no potential for confusion premised on these messages. (Dkt. No. 13 at 17–18.) By identifying that "the Dad Gang company does a girl dad hat," and then inquiring whether it too could use the phrase "girl dad," the competitor implicitly acknowledges there is a distinction between the "girl dad" products produced by Plaintiff and by Defendant. (*Id.* at 17.)

examples of t-shirts in the amended complaint. (*Id.* at 5–6.) Both in style and design, this particular use of the phrase "Girl Dad" appears almost identical to the stylized phrase "Dad Gang" on one of Defendant's hats as shown in a Facebook post in the complaint. (*Id.* at 9.) Although Defendant's use of the stylized phrase is its own company name, *see Fleischer Studios*, 925 F. Supp. 2d at 1074 ("[d]efendants use the words Betty Boop as an artistic design element and identify themselves as the source of the goods" and therefore the use is not source-identifying), on the face of the complaint, these two photos plausibly show there could be a "probability of confusion" between Plaintiff's product and Defendant's. *OffWhite Prods., LLC v. Off-White LLC*, 480 F. Supp. 3d 558, 564 (S.D.N.Y. 2020) (citation and quotation omitted).

      For purposes of Rule 12(b)(6), the Court must take all material allegations as admitted and construe the complaint in Plaintiff's favor. *See Keniston*, 717 F.2d at 1300. The Court acknowledges that aesthetic functionality is a fact-intensive inquiry better suited for a motion for summary judgment or a motion for a preliminary injunction. *See Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002); *see also Parts.com, LLC v. Yahoo! Inc.*, 996 F. Supp.2d 933, 937–938 (S.D. Cal. 2013) (denying motion to dismiss trademark infringement case); *Cove*, 2022 WL 423399, at *4 (denying motion for a preliminary injunction on a trademark infringement case). Accordingly, erring on the side of caution, the Court will allow the case to move forward so that the Parties may fully develop the factual record.[3]

---

[3] Defendant points out in its motion to dismiss that the timing of Plaintiff's use of the stylized font and design is suspect and argues that Plaintiff is engaged in an "intentional and calculated form of reverse trademark confusion." (*See* Dkt. No. 15 at 7–10.) The Court is unable to assess this argument using only the face of the amended complaint, which is the focus at this stage of the litigation. The Court will be in a position to address this argument only after a fully developed record is presented.

## IV   CONCLUSION

Accordingly, Defendant's motion to dismiss (Dkt. No. 15) is DENIED.

Dated this 12th day of November 2025.

David G. Estudillo
United States District Judge